**ELECTIONS − CANDIDATES − DISBURSEMENT UNDER THE FAIR CAMPAIGN FINANCING ACT TO WRITE-IN CANDIDATES**

July 29, 1994

*Mr. Gene M. Raynor*
*Administrator*
*State Administrative Board of Election Laws*

You have asked our opinion concerning the interpretation of certain provisions of the Fair Campaign Financing Act (the "Act"), Article 33, §31-1 *et seq.* of the Maryland Code, as that Act applies to write-in candidates.[1] Specifically, your question is whether a write-in candidate who qualifies for public funds in the general election is entitled to receive an "equal share" of the money remaining in the Fund.

For the reasons set forth below, we conclude that an eligible write-in candidate in the general election − that is, one who has raised at least $149,670 in "seed money" and who meets the Act's other requirements − is entitled to receive an "equal share" of the money remaining in the Fund. Thus, we reaffirm advice provided to candidates last year by the State Administrative Board of Election Laws. Summary of the Fair Campaign Financing Fund at 8 (May 1993).

## I

### Background

In a recent opinion, we addressed several interpretive issues related to the process by which candidates qualify for public funding pursuant to the Act. *See* 79 *Opinions of the Attorney General* 136 (1994). Your present inquiry involves an aspect of the disbursement of public funds to qualified candidates. As explained in that opinion, disbursements are made in the following manner:

---

[1] All statutory references in this opinion are to Article 33.

Half of the fund is to be distributed to eligible candidates in the Republican and Democratic primary elections. §31-4(b). In a contested primary, each eligible candidate is to received $1 in public contributions for every $2 in eligible private contributions. §31-5(b)(2). If a candidate is unopposed in the primary, the candidate is to receive $1 in public contributions for every $3 in eligible private contributions. §31-5(b)(3). The other half of the fund (*i.e.,* the half not used for the primary), plus any money left over from the primary is to be distributed "in equal shares" to eligible candidates in the general election, including write-in and petition candidates if otherwise eligible. §31-5(c).

79 *Opinions of the Attorney General* 136 at 139.

Thus, there are two types of disbursements under the Act. For the primary election, an eligible candidate receives, pursuant to the statutory formula, "matching funds" for eligible private contributions. §31-5(b). For the general election, however, the public funds are distributed in "equal shares." §31-5(c)(2).[2] You have now asked us to consider anew, and to explain in detail, the conclusion reflected in both our prior opinion and in advice distributed last year by the State Board — that a write-in candidate who qualifies for public funds in the general election is entitled to an "equal share" of the general election disbursement.

## II

### Write-In Candidates and the Fund

As defined by §1-1(a)(20), a "write-in candidate" means "a person whose name will not appear on the ballot but who files a certificate of candidacy in accordance with §4D-1 ...." Under the

---

[2] That subsection also provides: "An eligible candidate who did not receive public contributions in the primary, but is a nominee in the general election, may only receive public contributions in the general election if the candidate did not spend more than the maximum expenditure limit in the primary."

Election Code, write-in candidates are not permitted in a primary election. §5-3(f). Rather, the primary election is limited to recognized political parties. *See* §5-1; *Barnhart v. Mandel*, 311 F. Supp. 814 (D. Md. 1970). In the general election, however, a person who files a certificate of candidacy in accordance with the law is eligible to be a write-in candidate.[3]

Prior to 1986, the Act's application to write-in candidates was not clear. While the Act as originally introduced in 1974 expressly included provisions for independent (petition) candidates and unopposed primary nominees, there was no reference to write-in candidates. *See* Chapter 729 (House Bill 510) of the Laws of Maryland 1974. However, a November 25, 1974 letter from then Assistant Attorney General George A. Nilson to the Executive Director of the Task Force to Study Campaign Financing advised that, although the matter was not altogether free from doubt, the definition of "candidate" in the Act arguably included a write-in candidate. Relying on that letter, the Task Force subsequently recommended "that in a general election all major and minor party and independent candidates be eligible for public financing." The Task Force then specifically recommended that "unopposed and write-in candidates should not be eligible for public funds." Task Force to Study Campaign Financing, First Report 16 (January 1975).[4]

In the years following the Task Force report, little was done with the Act, save occasional legislation to delay its implementation, until a major overhaul of the Act in 1986. *See* 79 *Opinions of the Attorney General* 136 at 138-39. What role the 1975 Task Force

---

[3] Maryland's so-called "sore loser" provision prohibits the name of a candidate who lost in the primary election from being printed on the general election ballot. §8-2(a). A write-in candidate's name does not appear on the ballot, so this provision does not prevent a losing candidate in a primary from running as a write-in candidate in the general election.

[4] Interestingly, the original 1974 legislation included a provision stating: "No person who received matching payments as a candidate in a primary election and lost the primary election is eligible to receive any general election public contribution." Since a primary loser could only participate in the general election as a write-in candidate, this provision would have excluded write-in candidates from participating in the Act. However, the provision was deleted from the final version of the 1974 legislation.

report may have played in the 1986 substantive amendments is not clear. However, it is clear that the Task Force's position on write-in candidates was not shared by the 1986 General Assembly. To the contrary, House Bill 1781 in 1986 specifically addressed the Act's application to write-in candidates as part of a direction to the State Administrator of Election Laws to "promulgate comprehensive regulations to carry out the purposes and requirements of [the Act]."

Now codified as §31-4(c)(8), the Act directs that these regulations are to include provisions regarding distributions to:

> (i)   unopposed candidates;
>
> (ii)  candidates who are not members of the two principal political parties; and
>
> (iii)          *write-in candidates*.

(Emphasis added.) The implementing regulations, COMAR 14.02.13.08, specifically provide as follows: "A write-in candidate who has filed a certificate of candidacy which meets the requirements of law may receive a public contribution if the candidate meets the requirements of the Act and this chapter." *See also* COMAR 14.02.13.02B(2) ("'candidate' includes a Governor/Lieutenant Governor unit which: (i) Files in a party primary; or (ii) Becomes a general election candidate by any means other than nomination in a party primary.") One requirement is that the write-in candidate have raised at least the minimum amount of "seed money," $149,670.[5]

---

[5] In addition, the candidate must file with the State Board a notice of intention to qualify and a request for a public contribution not later than five days after the State Board has declared the identities of the candidates for Governor and Lieutenant Governor in the general election; the State Board now anticipates that the deadline for the notice and request will be September 28, 1994, but this date is subject to change. The candidate must also file a certificate of candidacy prior to requesting public funds and affirm that the candidate did not exceed the maximum spending limit in the primary election, if the write-in candidate sought nomination in the primary. Write-in candidates who are seeking public money from the Fund must file a certificate of candidacy on or before the deadline for requesting public funds discussed above, rather than the deadline provided in §4D-1(c).

Since a write-in candidacy is only permitted in the general election, it follows that the regulation speaks to the write-in candidate's eligibility for general election ("equal shares") disbursement, not matching funds. We explore this aspect of the question in Part III below.

## III

### Public Fund Disbursements

Prior to 1986, the disbursement of public funds was limited to matching funds in the general election.[6] The 1986 amendments established the two types of disbursements briefly outlined in Part I above. Now codified as §31-5, the Act specifically provides:

> (b)(1) The State Board shall order disbursement of funds, designated for disbursement in the primary, as provided in this subsection.
>
> (2) Candidates who are opposed in the primary shall receive $1 in public contributions for every $2 in eligible private contributions.
>
> (3) Candidates who are unopposed in the primary shall receive $1 in public contributions for every $3 in eligible private contributions.
>
> (c)(1) The State Board shall order disbursement in the general election of all money remaining in the Fund, including

---

[6] As originally introduced, House Bill 510 in 1974 provided for matching funds in a primary election and a lump sum disbursement in the general election. However, during consideration of the bill, an amendment, as explained by the Task Force, eliminated primary candidates from public financing and required that "partial public financing [be] directed towards general election candidates." Task Force Report at 6. The Task Force recommended as a "top priority" for the 1975 General Assembly that public financing be made available to both primary and general election candidates. *See* Task Force Report at 7, 15.

money remaining from the portion designated for the primary, as provided in this subsection.

(2) All eligible candidates who are nominees shall receive equal shares of the Fund.

(3) If a candidate is unopposed on the general election ballot, the candidate shall receive no public contributions.

(4) An eligible candidate who did not receive public contributions in the primary, but is a nominee in the general election, may only receive public contributions in the general election if the candidate did not spend more than the maximum expenditure limit in the primary.

In light of this statutory language, it is clear that any "nominee in the general election" is eligible for an "equal share" disbursement in that election. Traditionally, the term "nominee" refers to primary election winners and petition candidates, not write-in candidates. *See* §4-1 ("Nominations for office ... may be made by primary election or petition."). Thus, it could be argued that the General Assembly, through the use of the term "nominee," intended to exclude write-in candidates from receiving a public fund disbursement in the general election. In our view, however, the General Assembly did not intend to so exclude write-in candidates.

In the first place, it is highly doubtful that the term "nominee" was used intentionally to exclude write-in candidates when earlier in the Act special attention was given to address the eligibility of write-in candidates. *See* Part II above. Thus, while the starting point of legislative interpretation is the language of the statute itself, the "plain meaning rule of construction is not absolute; rather the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body." *Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590 (1992). Further "all parts of a statute are to be read together to determine intent, and reconciled and harmonized to the extent possible." *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753 (1993). With these precepts in mind, we think it is highly unlikely that the General Assembly would, on the one hand, mandate the promulgation of regulations governing disbursements to write-in candidates and then, on the other hand, exclude write-in candidates

from the Act. Rather, we think the use of the term "nominee" in §31-5 was the result of a drafting oversight, not a manifestation of legislative intent.

Our conclusion is bolstered by an amendment that occurred during consideration of the 1986 legislation. As introduced, §31-4(b) provided as follows: "Subject to the other requirements of this subtitle, the State Board shall distribute one-half of the money in the Fund to eligible candidates in the primary election and the remaining money in the fund to eligible candidates *who are nominees* in the general election." House Bill 1781 of 1986 (emphasis added).

Tellingly, the emphasized language referring to "nominees" was deleted during consideration of the bill. The exclusion of the term "nominees" in §31-4(b), in our view, illustrates that the General Assembly was cognizant of the conflict between the word "nominees" in the beginning of the section and the requirement mandating the promulgation of regulations for write-in candidates later in the section. In other words, the General Assembly intended to ensure the accessibility of the Fund to write-in candidates and took care to eliminate language suggesting that a write-in candidate was not entitled to access. *See also* §31-4(d) ("*all* eligible candidates"). Seemingly inadvertently, the same care was not exercised in relation to the use of the term "nominee" in §31-5(c).

If we were to read the term "nominee" in §31-5(c) literally, §31-4(c)(8)(iii), with its explicit reference to "write-in candidates," would be negated. This we cannot do. *See Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994) ("absent a clear intent to the contrary, a statute is to be read so that no ... phrase is rendered surplusage, superfluous, meaningless, or nugatory").

Further, even if the variation in language were thought to make the statute as a whole ambiguous on this point, the State Board's regulation allowing write-in candidates to qualify for the Fund would be decisive. *See* 76 *Opinions of the Attorney General* 3, 10, n.7 (1991) and accompanying text; *see generally Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837 (1984).

## IV

## Conclusion

In summary, it is our opinion that a write-in candidate who raises at least $149,670 in seed money by September 28, 1994 and meets all other statutory and regulatory requirements may obtain a share of the money remaining in the Fair Campaign Financing Fund after the primary election equal to the share of any other candidate.

J. Joseph Curran, Jr.
*Attorney General*

Mary O. Lunden
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*

*Editor's Note:*

The provisions construed in this opinion are currently codified in Article 33, Title 15, the "Public Financing Act."